## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN WINGERD, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | )    Case No. 18-CV-2024-JAR-KGG |
| | ) |
| KAABOOWORKS SERVICES, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| THE MADISON COMPANIES, LLC, | ) |
| | ) |
|         Defendants. | ) |
| | ) |

### AMENDED COMPLAINT

For his complaint against defendants, plaintiff alleges as follows:

### Parties

1.  Plaintiff is a 45-year-old citizen of Kansas.

2.  Defendant KAABOOWORKS SERVICES, LLC ("KAABOO") is a Delaware limited liability company and maintains its principal administrative offices in Colorado.

3.  All of KAABOO's members are limited liability companies whose members are citizens of Colorado or California.

4.  KAABOO is registered to do business in California and has duly appointed a resident agent in California for receipt of service of process.

5.  KAABOO is also registered to do business in Kansas and has duly appointed a resident agent in Kansas for receipt of service of process.

6.      Defendant The Madison Companies, LLC ("Madison") is a Delaware limited liability company and maintains its principal administrative offices in Colorado at the same location as the principal administrative offices of KAABOO.

7.      Madison is a member of KAABOO.

**<u>Background</u>**

8.      KAABOO organizes and promotes an annual live music and adult culture festival located in Del Mar, California.

9.      KAABOO claims to be "the first of its kind organizer of what the Rolling Stone called 'the Ultimate Entertainment Mix-perience' and Consequence of Sound described as 'a unique spin on what a festival could be.'"

10.     The first live music and adult culture festival under the KAABOO brand was held in Del Mar, California in September 2015.

11.     The festival continued in Del Mar, California on an annual basis in September 2016 and September 2017.

12.     Since its inception, the annual KAABOO festival has included performances from dozens of performers including Zac Brown Band, The Killers, Train, O.A.R., Snoop Dogg, Counting Crows, Aerosmith, Jimmy Buffett, Red Hot Chili Peppers, Pink, Muse, and Jason Derulo.

13.     The festival is scheduled to take place again in Del Mar, California in September 2018.

14.     KAABOO claims that its festivals have been "extremely successful due to [KAABOO's] ability to create a unique upscale experience for the attendees and attract large corporate partners and group sales clients."

15.     KAABOO claims that Huffpost has described KAABOO's festivals as "so much different than any other festival out there."

16.     KAABOO advertises its Del Mar, California festival tickets for sale at prices ranging from $243.50 to $15,000.00 and claims that its lists of persons attending prior festivals contain "tens of thousands of names."

17.     Substantially all of KAABOO's operating revenue comes from its annual live music and culture festival located in Del Mar, California.

18.     KAABOO and Madison share administrative resources, including but not limited to the physical location of their administrative offices, and their human resources professionals.

19.     Bryan Gordon is the CEO of KAABOO and is also the CEO of Madison.

20.     Shawna Earnest is Senior Vice President of Human Resources for Madison and KAABOO.

21.     KAABOO and Madison each employ 15 or more employees.

**Plaintiff's Employment**

22.     Plaintiff's company, Sprocket Marketing, LLC, provided marketing and sales services to KAABOO, Madison, and their related entities in connection with the 2015 festival in Del Mar, California.

23.     KAABOO and Madison were so impressed by plaintiff's work with Sprocket Marketing, LLC that, approximately two weeks after the conclusion of the 2015 festival, KAABOO offered to employ plaintiff as KAABOO's Senior Vice President of Marketing.

24.     Plaintiff accepted defendant's offer of employment and began working for KAABOO as Senior Vice President of Marketing on October 2, 2015.

25.     Plaintiff's paychecks came from KAABOO, but plaintiff also worked for Madison because of the close relationship between Madison and KAABOO.

26.     Plaintiff reported directly to KAABOO's and Madison's CEO, Bryan Gordon.

27.     Beginning in February 2017, plaintiff also reported to KAABOO's Chief Marketing and Brand Officer, Jason Felts, in a dual reporting relationship.

28.     Plaintiff was responsible for supervising a team of five employees, including Emily Byers.

29.     The explicit terms of plaintiff's employment called for plaintiff to be "based out of your home office, located in Lawrence, KS."

30.     The explicit terms of plaintiff's employment also called for plaintiff to travel from time to time.

31.     Plaintiff's work focused almost exclusively on marketing for the California festival.

32.     During the last six months of plaintiff's employment, Bryan Gordon instructed plaintiff to focus exclusively on the California festival.

33.     Each year, plaintiff worked in excess of 100 hours a week in Del Mar, California during and around the time of the annual festival.

34.     Plaintiff also worked in California during other parts of the year.

35.     Plaintiff regularly worked from his home office in Kansas when he was not physically present in California.

36.     Even during the times when plaintiff was not physically present in California, the primary (and in later months exclusive) purpose of plaintiff's work was year-round marketing and promotion of the annual festival in California.

## Plaintiff's Disability, Demotion, and Termination

37.     Defendants gave plaintiff an A+ performance rating in October 2016, shortly after the conclusion of the 2016 festival in Del Mar.

38.     Prior to October 2016, defendants generally gave plaintiff stellar feedback about his employment performance.

39.     Plaintiff was diagnosed with kidney and liver cancer in November of 2016.

40.     Doctors have informed plaintiff that his condition is likely terminal.

41.     Plaintiff told defendants and his work colleagues about his condition shortly after confirming his diagnosis.

42.     In response, Bryan Gordon initially told plaintiff that KAABOO and Madison would fully support plaintiff in his fight against cancer, and that he would always have a place at KAABOO and Madison, even if it became necessary for plaintiff to take a diminished role as his cancer progressed.

43.     Plaintiff worked full time during the first seven months of his cancer treatments.

44.     It was necessary for plaintiff to have surgery on July 6, 2017.

45.     Plaintiff was unable to work for about six weeks as he recovered from the surgery.

46.     Pursuant to defendants' policies and procedures, plaintiff sought and obtained defendants' approval to take the necessary time off for surgery and recovery.

47.     Plaintiff returned to his regular working hours in late August 2017, shortly before the 2017 festival in Del Mar, California.

48.     Plaintiff traveled to Del Mar on September 11, 2017 to begin setting up for the 2017 festival.

49.     This was plaintiff's first opportunity to meet in person with his work colleagues after his surgery, and he was excited to see them.

50.     As plaintiff was arriving in the San Diego area, plaintiff received an urgent message from Emily Byers.

51.     Ms. Byers told plaintiff that Bryan Gordon and Jason Felts had called an emergency meeting that was to begin immediately upon plaintiff's arrival at the festival site in Del Mar, and instructed plaintiff not to speak with anyone other than her until the meeting took place.

52.     When plaintiff received this message from Ms. Byers, plaintiff believed Mr. Gordon and Mr. Felts had decided to throw him a surprise party to welcome him back after his surgery.

53.     Upon plaintiff's arrival at the festival site in Del Mar, Ms. Byers picked plaintiff up in a golf cart.

54.     Ms. Byers looked sullen and upset.

55.     Ms. Byers told plaintiff that Bryan Gordon and Jason Felts had called the emergency meeting to inform plaintiff that he was not going to be allowed to exercise any authority during the festival that week.

56.     Plaintiff was demoted.

57.     Ms. Byers drove plaintiff to the meeting site, where she and plaintiff waited for Bryan Gordon and Jason Felts to arrive.

58.     Mr. Gordon never came to the meeting even though he was present at the festival site.

59.     Mr. Felts eventually came to the meeting but refused to speak with plaintiff about plaintiff's authority.

60.     After the meeting, Ms. Byers was crying.

61.     Ms. Byers told plaintiff that she was not sure why the companies were treating plaintiff in this way.

62.     At a team meeting one night during the festival set up, plaintiff attempted to give input to the group of individuals who had previously been part of plaintiff's marketing team.

63.     As the meeting concluded, Mr. Felts asked Ms. Byers to visit with him privately, and she did so.

64.     After the private meeting, Ms. Byers told plaintiff that Mr. Felts reiterated what he had previously told her – she was not to allow plaintiff to give any input to plaintiff's (former) team.

65.     Ms. Byers also told plaintiff that Mr. Felts told her that the decision to demote plaintiff had come directly from Bryan Gordon.

66.     Ms. Byers had previously reported to plaintiff.

67.     But now, during the most critical time of year for KAABOO, KAABOO did not allow plaintiff to do anything except upon Ms. Byers' direct order.

68.     Plaintiff was not able to provide guidance or direction to the other people who had reported to him, either.

69.     Plaintiff worked over 120 hours as a demoted employee during the nine-day set up, operation, and take down of the 2017 festival.

70.     On September 29, 2017, after plaintiff had returned home to Kansas upon the conclusion of defendants' work at the festival site, Jason Felts and Shawna Earnest told plaintiff via telephone that his employment had been terminated effective that day.

71.     Also, on September 29, 2017, defendants mailed plaintiff written notice that his employment had been terminated.

72.     Jason Felts said that plaintiff should more spend time with his family during his sickness.

73.     Jason Felts said that defendants needed someone who could travel more, even though plaintiff had recently completed an intense period of work travel and had never told defendants that he would be unable to travel.

74.     Defendants replaced plaintiff with Emily Byers.  Ms. Byers is younger than plaintiff and she does not have a disability.

**Jurisdiction and Venue**

75.     This Court has subject matter jurisdiction over plaintiff's claims under the ADA, ADAAA, ADEA, and FLSA pursuant to 28 U.S.C. § 1331.

76.     This Court has subject matter jurisdiction over plaintiff's claims under California state statutory and common law pursuant to 28 U.S.C. § 1367.

77.     Venue in this district is proper pursuant to 42 U.S.C. § 2000e-5(f)(3), because plaintiff would have worked for defendants in Kansas but for defendants' unlawful employment practices.

78.     KAABOO's duly appointed resident agent for receipt of service within this district is Corporation Service Company, 2900 SW Wanamaker Drive Suite 204, Topeka, Kansas 66614.

79.     KAABOO may be served with process within this district pursuant to Fed. R. Civ. P. 4(h)(1)(A), 4(h)(1)(B), 4(e)(1), 4(e)(2)(C), and/or K.S.A. § 60-304(e)(1), by service upon its duly appointed resident agent in Kansas.

80.     This Court has personal jurisdiction over KAABOO because KAABOO will be served within this district and because KAABOO has specifically consented to jurisdiction in Kansas by filing the following statement with the Kansas Secretary of State:  "[KAABOO] consents, without power of revocation, that actions may be commenced against it in the proper court of any county in the state of Kansas."

81.     This Court also has personal jurisdiction over KAABOO for the additional reasons described below.

82.     Madison may be served with process upon its resident agent in Delaware: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

83.     This Court has personal jurisdiction over both defendants because defendants entered into an employment-at-will arrangement with plaintiff while plaintiff was a resident of Kansas which defendants intended plaintiff to perform, in part, in Kansas, and this action arises out of the relations and obligations created by that employment, as described herein.

84.     This Court has personal jurisdiction over both defendants because defendants committed torts and statutory violations against plaintiff in Kansas, as described herein.

**Exhaustion of Administrative Remedies**

85.     On December 29, 2017, the San Diego Local Office of the United States Equal Employment Opportunity Commission ("EEOC") timely received and filed plaintiff's charge alleging disability and age discrimination.  A copy is attached hereto as Exhibit A.

86.     Pursuant to plaintiff's request and pursuant to a lawful work sharing agreement between the EEOC and California's Department of Fair Employment and Housing ("DFEH"), plaintiff's charge of discrimination was dual filed with DFEH.

87.     DFEH issued plaintiff a right-to-sue letter.  A copy is attached hereto as Exhibit B.

88.     Pursuant to 29 C.F.R. § 1601.28(a)(2), plaintiff requested in writing that the EEOC issue notice of right to sue prior to the expiration of 180 days upon determination by the appropriate Director that it is probable that the EEOC will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge.  A copy of plaintiff's written request is attached hereto as Exhibit C.

89.     The EEOC issued plaintiff a right to sue letter to which the Local Director of the EEOC attached a written certificate indicating his determination that it is probable that the EEOC will be unable to complete its administrative processing of plaintiff's charge within 180 days of filing.  A copy is attached hereto as Exhibit D.

90.     The original complaint in this case was filed within 30 days after plaintiff received the notice of right to sue from DFEH and EEOC.

91.     On January 16, 2018, plaintiff timely filed a new charge with the EEOC alleging unlawful retaliation.  A copy is attached as Exhibit E.

92.     Pursuant to plaintiff's request and pursuant to a lawful work sharing agreement between the EEOC and DFEH, plaintiff's retaliation charge was dual filed with DFEH.

93.     DFEH issued plaintiff a right-to-sue letter on the retaliation charge.  A copy is attached hereto as Exhibit F.

94.     Pursuant to 29 C.F.R. § 1601.28(a)(2), plaintiff requested in writing that the EEOC issue notice of right to sue prior to the expiration of 180 days upon determination by the appropriate Director that it is probable that the EEOC will be unable to complete its administrative processing of the retaliation charge within 180 days from the filing of the charge. A copy of plaintiff's written request is attached hereto as Exhibit G.

95.     The EEOC issued plaintiff a right to sue letter to which the Local Director of the EEOC attached a written certificate indicating his determination that it is probable that the EEOC will be unable to complete its administrative processing of plaintiff's retaliation charge within 180 days of filing.  A copy is attached hereto as Exhibit H.

96.     This amended complaint is filed within one day after plaintiff received notice of right to sue on the retaliation charge from both DFEH and EEOC.

97.     Plaintiff has properly exhausted all administrative remedies.


## Count I

### Discrimination in Violation of the ADAAA

98.     Plaintiff incorporates by reference paragraphs 1 through 97.

11

99.     Plaintiff is disabled under the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), in that plaintiff's cancer is a physical impairment that substantially limits the major life activity of normal cell growth.  *See* 42 U.S.C. § 12102(2)(B).

100.    Plaintiff's cancer also makes him a person who has a record of having such an impairment and/or a person who is regarded as having such an impairment.

101.    Regardless of plaintiff's disability, plaintiff was able to perform the essential functions of his position, either with or without reasonable accommodations.

102.    Defendants intentionally discriminated against plaintiff on the basis of his disability by (a) demoting plaintiff because of his disability, (b) terminating plaintiff's employment because of his disability, (c) not making reasonable accommodations to the known limitations of an otherwise qualified individual with a disability, (d) subjecting a qualified individual with a disability to different terms, conditions and privileges of employment than the terms, conditions and privileges available to non-disabled employees, and (e) refusing reasonably to accommodate plaintiff's disability and/or initiate an informal, interactive process to identify potential reasonable accommodations, and (f) otherwise interfering with plaintiff in his exercise of rights under federal law prohibiting discrimination on the basis of a qualified disability, thereby violating the ADAAA.

103.    As a direct and proximate result of defendants' unlawful discrimination under the ADAAA, plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to his reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

104.    The defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of plaintiff's rights under the ADAAA, thus justifying an award of punitive damages in an amount sufficient to punish defendants and to deter defendants from similar conduct in the future.

WHEREFORE, plaintiff prays for judgment in his favor and against defendants on Count I, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any other such relief as the Court deems just and proper.

## Count II

### Retaliation in Violation of the ADAAA

105.    Plaintiff incorporates by reference paragraphs 1 through 104.

106.    Plaintiff took CEO Bryan Gordon at his word that defendants would accommodate plaintiff as he fights cancer.

107.    Plaintiff in good faith requested that defendants provide the reasonable accommodation that he be allowed the necessary time off to undergo and recover from his July 6, 2017 surgery.  *See* 29 C.F.R. § 825.702(b).

108.    Plaintiff followed defendants' policies and procedures in requesting and taking the time off.

109. Plaintiff's request for time off for surgery and recovery, and plaintiff's time off for surgery and recovery, constituted protected activity under the ADAAA.

110. Despite initially allowing plaintiff the necessary time off for his surgery and recovery, defendants ultimately retaliated against plaintiff for taking the time off, and for conducting his work affairs based on the belief that he could take Bryan Gordon at his word about the defendants' willingness to accommodate plaintiff's disability.

111. Defendants retaliated against plaintiff in violation of the ADAAA by demoting plaintiff almost immediately after his return to work and then terminating plaintiff's employment less than three weeks thereafter.

112. Defendants' decision to demote and terminate plaintiff was caused or motivated by plaintiff's protected activity.

113. As a direct result of defendants' unlawful retaliation, plaintiff has suffered actual damages in the form of lost wages, lost benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, emotional pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to his reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

114. The defendants' conduct was outrageous as it maliciously or recklessly violated plaintiff's rights under the ADAAA, and is sufficiently culpable to warrant an award of punitive damages.

WHEREFORE, plaintiff prays for judgment in his favor and against defendants on Count II, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary

losses, damages for future loss of wages and benefits, punitive damages, all costs including

reasonable attorneys' fees, equitable relief as appropriate, including but not limited to

reinstatement, and any other such relief as the Court deems just and proper.


## Count III

### Discrimination in Violation of the ADEA

115.     Plaintiff incorporates by reference paragraphs 1 through 114.

116.     Plaintiff's age was a motivating factor and/or determining factor and/or "but for"

factor in defendants' intentional decisions to discriminate against him in the terms and conditions

of his employment, including but not limited to defendants' decision to demote plaintiff,

terminate plaintiff's employment, and treat plaintiff as though he was too near death to keep his

position or remain employed

117.     Defendants treated similarly situated, substantially younger employees better than

plaintiff in the terms and conditions of employment.

118.     Defendants' conduct was willful, wanton, and malicious, and showed complete

indifference to or conscious disregard of the rights of plaintiff under the ADEA, thus justifying

an award of liquidated damages.

119.     As the direct result of defendants' illegal and discriminatory actions, plaintiff has

sustained damages in the form of lost earnings and benefits, inconvenience, harm to his

reputation, and other nonpecuniary losses.

WHEREFORE, plaintiff prays for judgment in his favor and against defendants on Count

III, and requests an award of his actual damages, including but not limited to his lost wages and

benefits, with interest through the date of trial, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, post-judgment interest, and any such other relief as the Court deems proper.

## Count IV

### FLSA Failure to Pay Overtime

120.    Plaintiff incorporates by reference paragraphs 1 through 119.

121.    Defendants were employers subject to the Fair Labor Standards Act.

122.    Plaintiff was engaged in interstate commerce as part of his employment for defendants.

123.    Upon his September 11, 2017 demotion from management-level responsibilities with defendants, plaintiff became a non-exempt employee under the FLSA.

124.    Plaintiff worked over 120 hours in the nine days beginning September 11, 2017, but defendants failed to pay plaintiff overtime pursuant to the FLSA.

125.    Plaintiff was damaged by defendants' failure to pay him overtime.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count IV, and requests an award of his wages found to be due and owing, plus an additional equal amount as liquidated damages, prejudgment interest in the event liquidated damages are not awarded, reasonable attorneys' fees and costs, and any such other relief as the Court deems proper.

## Count V

**Discrimination in Violation of
California Fair Employment and Housing Act – Demotion**

126.    Plaintiff incorporates by reference paragraphs 1 through 125.

127.    The California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §
12940(a) et seq., prohibits discrimination in employment on account of an actual or perceived
medical condition or disability.

128.    Under FEHA, "[t]he law of [California] contains broad definitions of physical
disability, mental disability, and medical condition.  It is the intent of the Legislature that the
definitions of physical disability . . . be construed so that applicants and employees are protected
from discrimination due to an actual or perceived physical . . . impairment that is disabling,
potentially disabling, or perceived as disabling or potentially disabling."  Cal. Govt. Code §
12926.1(b).

129.    The California legislature has declared its intent that FEHA be independent of the
Americans with Disabilities Act.  Cal. Govt. Code § 12926.1(d).

130.    FEHA also prohibits age discrimination in any form.

131.    Defendants were and are employers covered by FEHA, in that they employed
plaintiff to provide services as an employee within the state of California, and plaintiff in fact
provided services as an employee, within the state of California.

132.    Plaintiff is a disabled person under FEHA.

133.    Regardless of plaintiff's disability, plaintiff was able to perform the essential
functions of his position, either with or without reasonable accommodations.

134.     Defendants unlawfully discriminated against plaintiff within the state of California on the basis of plaintiff's cancer disability and on the basis of plaintiff's age when defendants demoted plaintiff upon his arrival to work in California on September 11, 2017.

135.     Within the state of California, Defendants unlawfully discriminated against plaintiff by demoting him in favor of an employee who was not disabled and who was younger than plaintiff.

136.     The shock of being demoted immediately upon his first opportunity to reunite with his work colleagues and team after surgery had a major impact upon plaintiff.  He felt angry, raw, and worried that his employment might be terminated.  He had concerns over losing health insurance for himself and his family, and concerns that he might not be able to find other suitable employment if he were terminated.

137.     Plaintiff suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

138.     In addition, plaintiff suffered lost overtime pay after his demotion as described elsewhere herein.

139.     Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

140.     As authorized by California Government Code § 12965(b), plaintiff is entitled to recover his reasonable attorney fees.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count V, and requests an award of his actual damages, including but not limited to damages for

emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, punitive damages, reasonable attorneys' fees, all costs, and any other such relief as the Court deems just and proper.

## Count VI

### Discrimination in Violation of
### California Fair Employment and Housing Act – Termination

141.    Plaintiff incorporates by reference paragraphs 1 through 140.

142.    Bryan Gordon and Jason Felts decided to terminate plaintiff's employment while they were physically present in California in September of 2017.

143.    At the time defendants terminated plaintiff's employment, plaintiff's work focused exclusively on marketing for the California festival.

144.    At the time defendants terminated plaintiff's employment, substantially all of KAABOO's operating revenue came from its annual festival in California.

145.    Defendants unlawfully discriminated against plaintiff under FEHA on the basis of plaintiff's cancer disability and on the basis of plaintiff's age when defendants decided to terminate plaintiff's employment and when defendants terminated plaintiff's employment.

146.    As the result of defendants' wrongful conduct, plaintiff has lost employment with the associated loss of salary, bonus, and benefits.

147.    Plaintiff is reasonably certain to suffer additional substantial economic losses in the future.  He is 45 years old and has been declared terminally ill.  He most likely will have a difficult time finding comparable employment after his sudden termination.

148.    The shock of being terminated had a major impact upon plaintiff.  He felt angry, raw, and worried about his ability to provide for his family.  He had concerns over losing health

insurance for himself and his family, and concerns that he might not be able to find other suitable employment.

149.    Plaintiff has suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

150.    Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

151.    As authorized by California Government Code § 12965(b), plaintiff is entitled to recover his reasonable attorney fees.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count VI, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, reasonable attorneys' fees, all costs, and any other such relief as the Court deems just and proper.

## Count VII

**Retaliation in Violation of
California Fair Employment and Housing Act – Demotion**

152.    Plaintiff incorporates by reference paragraphs 1 through 151.

153.    Plaintiff took CEO Bryan Gordon at his word that defendants would accommodate plaintiff as he fights cancer.

154.     Plaintiff in good faith requested that defendants provide the reasonable accommodation that plaintiff be allowed the necessary time off to undergo and recover from his July 6, 2017 surgery.

155.     Plaintiff followed defendants' policies and procedures in requesting and taking the time off.

156.     Plaintiff's request for time off for surgery and recovery, and plaintiff's time off for surgery and recovery, constituted protected activity under FEHA.

157.     Despite initially allowing plaintiff the necessary time off for his surgery and recovery, defendants ultimately retaliated against plaintiff for taking the time off, and for conducting his work affairs based on the belief that he could take Bryan Gordon at his word about the defendants' willingness to accommodate plaintiff's disability and sickness.

158.     Defendants' retaliated against plaintiff in violation of FEHA by demoting plaintiff within the state of California immediately upon his return to work in California.

159.     Defendants' decision to demote plaintiff was caused or motivated by plaintiff's protected activity.

160.     The shock of being demoted immediately upon his first opportunity to reunite with his work colleagues and team after surgery had a major impact upon plaintiff.  He felt angry, raw, and worried that his employment might be terminated.  He had concerns over losing health insurance for himself and his family, and concerns that he might not be able to find other suitable employment if he were terminated.

161.     Plaintiff suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

162.     In addition, plaintiff suffered lost overtime pay after his demotion as described elsewhere herein.

163.     Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

164.     As authorized by California Government Code § 12965(b), plaintiff is entitled to recover his reasonable attorney fees.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count VII, and requests an award of his actual damages, including but not limited to damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, punitive damages, reasonable attorneys' fees, all costs, and any other such relief as the Court deems just and proper.

**Count VIII**

**Retaliation in Violation of
California Fair Employment and Housing Act – Termination**

165.     Plaintiff incorporates by reference paragraphs 1 through 164.

166.     Plaintiff took CEO Bryan Gordon at his word that defendants would accommodate plaintiff as he fights cancer.

167.     Plaintiff in good faith requested that defendants provide the reasonable accommodation that he be allowed the necessary time off to undergo and recover from his July 6, 2017 surgery.

168.     Plaintiff followed defendants' policies and procedures in requesting and taking the time off.

169.     Plaintiff's request for time off for surgery and recovery, and plaintiff's time off for surgery and recovery, constituted protected activity under FEHA.

170.     Despite initially allowing plaintiff the necessary time off for his surgery and recovery, defendants ultimately retaliated against plaintiff for taking the time off, and for conducting his work affairs based on the belief that he could take Bryan Gordon at his word about the defendants' willingness to accommodate plaintiff's disability.

171.     Defendants retaliated against plaintiff in violation of FEHA by terminating plaintiff's employment within three weeks after his return to work.

172.     Defendants' decision to terminate plaintiff's employment was caused or motivated by plaintiff's protected activity.

173.     Bryan Gordon and Jason Felts decided to terminate plaintiff's employment while they were physically present in California in September of 2017.

174.     At the time defendants terminated plaintiff's employment, plaintiff's work focused exclusively on marketing for the California festival.

175.     At the time defendants terminated plaintiff's employment, substantially all of KAABOO's operating revenue came from its annual festival in California.

176.     As the result of defendants' wrongful retaliatory conduct, plaintiff has lost employment with the associated loss of salary, bonus, and benefits.

177.     Plaintiff is reasonably certain to suffer additional substantial economic losses in the future.  He is 45 years old and has been declared terminally ill.  He most likely will have a difficult time finding comparable employment after his sudden termination.

178.    The shock of being terminated had a major impact upon plaintiff.  He felt angry, raw, and worried about his ability to provide for his family.  He had concerns over losing health insurance for himself and his family, and concerns that he might not be able to find other suitable employment.

179.    Plaintiff has suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

180.    Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

181.    As authorized by California Government Code § 12965(b), plaintiff is entitled to recover his reasonable attorney fees.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count VIII, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, reasonable attorneys' fees, all costs, and any other such relief as the Court deems just and proper.

**Count IX**

**Wrongful Demotion in Violation of California Public Policy (*Tameny* Claim)**

182.    Plaintiff incorporates by reference paragraphs 1 through 181.

183.    Defendants wrongfully demoted plaintiff in California upon plaintiff's arrival in California on September 11, 2017, in violation of California public policy.

184.    Specifically, a substantial motivating reason for plaintiff's demotion was his disability; his age; retaliation for requesting, obtaining, and taking the reasonable accommodation of time missed from work as the result of his July 9, 2017 cancer surgery and recovery; and/or retaliation for conducting his work affairs based on the belief that he could take Bryan Gordon at his word when Mr. Gordon told plaintiff that defendants would reasonably accommodate plaintiff's cancer.

185.    Defendants are liable for wrongful demotion in violation of California's public policies, including those embodied in California's FEHA, as set forth in Cal. Govt. Code § 12940 et seq., prohibiting actual or perceived medical condition or disability discrimination and retaliation as well as age discrimination.

186.    The shock of being demoted immediately upon his first opportunity to reunite with his work colleagues and team after surgery had a major impact upon plaintiff.  He felt angry, raw, and worried that his employment might be terminated.  He had concerns over losing health insurance for himself and his family, and concerns that he might not be able to find other suitable employment if he were terminated.

187.    Plaintiff suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

188.    In addition, plaintiff suffered lost overtime pay after his demotion as described elsewhere herein.

189.    Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive

damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count IX, and requests an award of his actual damages, including but not limited to damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, punitive damages, all costs, and any other such relief as the Court deems just and proper.

## Count X

### Wrongful Termination in Violation of California Public Policy (*Tameny* Claim)

190.   Plaintiff incorporates by reference paragraphs 1 through 189.

191.   Bryan Gordon and Jason Felts decided to terminate plaintiff's employment while they were physically present in California in September of 2017.

192.   At the time defendants terminated plaintiff's employment, plaintiff's work focused exclusively on marketing for the California festival.

193.   At the time defendants terminated plaintiff's employment, substantially all of KAABOO's operating revenue came from its annual festival in California.

194.   Defendants wrongfully decided to terminate plaintiff's employment and terminated plaintiff's employment in violation of California public policy.

195.   Specifically, a substantial motivating reason for defendants' decision to terminate plaintiff's employment was his disability; his age; retaliation for requesting, obtaining, and taking the reasonable accommodation of time missed from work as the result of his July 9, 2017 cancer surgery and recovery; and/or retaliation for conducting his work affairs based on the

26

belief that he could take Bryan Gordon at his word when Mr. Gordon told plaintiff that defendants would reasonably accommodate plaintiff's cancer.

196.    Defendants are liable for wrongful termination in violation of California's public policies, including those embodied in California's FEHA, as set forth in Cal. Govt. Code § 12940 et seq., prohibiting actual or perceived medical condition or disability discrimination and retaliation as well as age discrimination.

197.    As the result of defendants' wrongful conduct, plaintiff has lost employment with the associated loss of salary, bonus, and benefits.

198.    Plaintiff is reasonably certain to suffer additional substantial economic losses in the future.  He is 45 years old and has been declared terminally ill.  He most likely will have a difficult time finding comparable employment after his sudden termination.

199.    The shock of being terminated had a major impact upon plaintiff.  He felt angry, raw, and worried about his ability to provide for his family.  He had concerns over losing health insurance for himself and his family, and concerns that he might not be able to find other suitable employment.

200.    Plaintiff has suffered emotional distress in the form of anger, frustration, worry, anxiety, and upset.

201.    Defendants acted toward plaintiff with a conscious disregard of his rights and safety and with malice or oppression so as to justify an award of exemplary and punitive damages under California Civil Code § 3294 in an amount sufficient to punish and to deter others from similar misconduct.

WHEREFORE, plaintiff demands judgment in his favor and against defendants on Count X, and requests an award of his actual damages, including but not limited to his lost wages and

benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, reasonable attorneys' fees, all costs, and any other such relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 30, 2018                    BARBER EMERSON, L.C.

                                           By   s/ Terrence J. Campbell
                                                Terrence J. Campbell, KS #18377
                                                Catherine C. Theisen, KS #22360
                                                1211 Massachusetts St.
                                                P.O. Box 667
                                                Lawrence, KS  66044
                                                Tele:  (785) 843-6600
                                                Fax:  (785) 843-8405
                                                tcampbell@barberemerson.com
                                                ctheisen@barberemerson.com
                                                *Attorneys for Plaintiff*