# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRIAN WINGERD,

    **Plaintiff,**

v.

KAABOOWORKS SERVICES, LLC, and
THE MADISON COMPANIES, LLC,

    **Defendants.**

Case No. 18-CV-2024-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Brian Wingerd brings this action alleging discrimination and retaliation claims under the Americans with Disabilities Amendments Act ("ADAA") and the Age Discrimination in Employment Act ("ADEA"), failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), and several claims under California law, against KAABOOWorks Services, LLC ("KAABOO"), and the Madison Companies, LLC ("Madison"), whom Plaintiff alleges are his former employers.[1] This matter comes before the Court on Defendant Madison's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 24). The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court denies Madison's motion.

## I.     Legal Standard

Plaintiff has the burden of establishing personal jurisdiction over Defendant.[2] In the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[3] "The plaintiff may make this prima facie

---

[1] Whether KAABOO and Madison were joint employers of Plaintiff is a contested issue.

[2] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[3] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[4] Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[5] At the same time, the Court does not have to accept as true conclusory allegations, nor incompetent evidence. When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[6] The court resolves all factual disputes in favor of the plaintiff.[7] Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[8] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[9]

## II.     Factual Background

Drawing all reasonable inferences in favor of Plaintiff, the following relevant facts are taken from the Complaint, and from the exhibits attached to the parties' briefs. The Court does not consider any general or conclusory allegations not supported by affidavits or other competent evidence, and has resolved all factual disputes in Plaintiff's favor.

---

[4]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286 (10th Cir. 2007)); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[5]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[6]*Pytlik*, 887 F.2d at 1376; *see also Shrader*, 633 F.3d at 1248.

[7]*Dudnikov*, 514 F.3d at 1070.

[8]*Behagen*, 744 F.2d at 733.

[9]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Defendant Madison is a Delaware limited liability company that operates as a private investment firm and is headquartered in Colorado. Defendant KAABOO was formed in June 2015, and initially Madison was its sole member.[10] Madison and KAABOO share the same administrative office in Colorado. Since 2015, Defendant KAABOO has organized and promoted an annual "live music and adult culture festival" in California that has hosted the Killers, Snoop Dogg, Jimmy Buffett, Pink, and other artists.[11] Plaintiff's company, Sprocket Marketing, LLC, provided marketing and sales services to KAABOO, Madison, and their related entities for the 2015 KAABOO festival. Following the 2015 festival, KAABOO offered to employ Plaintiff in house as KAABOO's Senior Vice President of Marketing. The written offer of employment bore the KAABOO logo. Plaintiff accepted the offer in a telephone call with Bryan Gordon, who is CEO of both KAABOO and Madison. Shortly after his employment began, Madison sent an email to Plaintiff inviting him to Madison's holiday party in Colorado, which both Plaintiff and his wife attended.[12]

During his employment, Plaintiff provided marketing and sales services related to the annual KAABOO festival to both KAABOO and Madison. Plaintiff's employment duties related primarily to the KAABOO festival. He reported directly to Gordon, and he communicated frequently with Gordon by phone, email, and Google Hangouts from his Kansas residence. Beginning in February 2017, Plaintiff also reported to KAABOO's Chief Marketing and Brand Officer, Jason Felts. The terms of Plaintiff's employment called for him to be "based out of your home office, located in Lawrence, KS."[13]

---

[10] Madison ceased having a membership interest in KAABOO on January 2, 2017. All of KAABOO's members are now limited liability companies whose members are citizens of Colorado or California.

[11] Doc. 1 ¶¶ 8–12.

[12] *See* Docs. 38-2, 38-3.

[13] Doc. 1 ¶ 29.

Plaintiff regularly received e-mail communications from the "@madisoncos.com" domain from Gordon and Shawna Earnest, Madison's Senior Vice President of Human Resources.[14] These emails provided instruction and direction regarding his employment responsibilities and employment services. Defendant initiated some of these email chains, and Gordon and Earnest initiated others. Several e-mails from Earnest identified her dual role as the Senior Vice President of Human Resources for "Madison Companies, LLC, KAABOOWorks Services, LLC."[15] Plaintiff also received phone calls at his Lawrence home from Gordon, Earnest, and others regarding his employment duties. In these communications, Gordon and Earnest did not state whether they were operating in their capacities only as KAABOO officers, or also as Madison officers.[16]

Plaintiff's paystubs and W-2 forms came from KAABOO. However, Plaintiff's quarterly review form for the fourth quarter in 2016 was titled "The Madison Companies, LLC Quarterly Review."[17] Plaintiff received an A+ employment performance rating after the 2016 KAABOO festival. Plaintiff discussed the review with Gordon, who did not state that the Madison title was erroneous.

Plaintiff was diagnosed with kidney and liver cancer in November 2016. He notified Gordon of his diagnosis shortly after he received it. Gordon explained that KAABOO and

---

[14]Doc. 38-1 ¶ 9; Doc. 38-4.

[15]*E.g.*, Docs. 34-3 and 34-6.

[16]Doc. 38-1 ¶ 21. Madison presents a declaration by Gordon, in which he states that Plaintiff reported to Gordon in his capacity as CEO of KAABOO, and that no person acting in the capacity of a Madison officer or employee made employment decisions related to Plaintiff. Doc. 25-1 ¶¶ 12, 14. Because Plaintiff has presented evidence, through his declaration, that he provided employment services to Madison and that Gordon completed a performance review with Plaintiff using Madison forms without explaining that the review was being done in Gordon's capacity as a KAABOO officer only, the Court finds that the capacity in which Gordon interacted with Plaintiff is a disputed fact, which must be resolved in favor of Plaintiff.

[17]Doc. 34-2.

Madison would support Plaintiff's fight against cancer, and that he would always have a place at KAABOO and Madison, even if it became necessary for him to take a diminished role as his cancer progressed. Specifically, Gordon stated that Plaintiff would have a place "at Madison," whether with the KAABOO project or some other Madison project.[18] After Plaintiff had surgery on July 6, 2017, he sought and obtained leave to take time off—about six weeks—to recover from the surgery. The forms that displayed Plaintiff's time off balances included Madison headers.[19] Because he regularly received communications from Madison employees using their Madison email accounts, because he was presented with Madison forms regarding his employment, and because Madison and KAABOO shared administrative resources, including the physical location of their administrative office and employee services, Plaintiff understood his employers to be both Madison and KAABOO.[20]

Plaintiff returned to his regular working hours in late August 2017, shortly before the 2017 KAABOO festival. Plaintiff traveled to California in September 2017 to help with setting up the festival. He worked approximately 120 hours on site over nine days.

Following the 2017 festival, and after Plaintiff had returned to Kansas, Felts and Earnest called Plaintiff to inform him that he was being terminated.[21] Plaintiff later received email and

---

[18] Doc. 38-1 at 4.

[19] Doc. 34-5. These forms were part of an online HR tracking program that the companies used.

[20] Doc. 38-1 ¶ 14. In its reply, Madison references an excerpt of Plaintiff's deposition, in which he testified that "being a former partner of a company, when I saw KAABOOWorks Services, LLC or KAABOO LLC, I understood that KAABOO was my employer." Doc. 56 at 5; Doc. 56-1. Madison argues this excerpt contradicts Plaintiff's statements in his declaration. Because this deposition excerpt constitutes "new material" submitted for the first time in Madison's reply, the Court does not rely on it. *See Stevens v. Deluxe Fin. Servs., Inc.*, 199 F. Supp. 2d 1128, 1130 (D. Kan. 2002) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)) (explaining that court may either permit surreply or refrain from relying on new material in reply brief). Even if the Court relied on this deposition excerpt and Madison's corresponding arguments, the Court is not convinced that this excerpt discredits Plaintiff's statements in his declaration or resolves the issue of whom Plaintiff believed he was employed by.

[21] *Id.*

U.S. mail communications from Earnest at his home in Lawrence, confirming his termination. The email came from Earnest's @madisoncos.com email account and had Madison and KAABOO logos and markings. Attached to the e-mail was a "Separation Agreement." The agreement explained that it was made between Plaintiff and KAABOO, and contained terms related to Plaintiff's termination.[22] The Agreement contained a "General Release" provision, which sought a release of all claims Plaintiff had against both KAABOO and Madison.[23] Plaintiff understood these communications as terminating his employment from both KAABOO and Madison.

**III. Discussion**

Federal courts follow state law "in determining the bounds of their jurisdiction over persons."[24] To establish personal jurisdiction over a defendant, a plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process.[25] The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis.[26]

The due process analysis is comprised of two steps. First, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."[27] If the requisite minimum contacts exist, the

---

[22]Doc. 32-3 at 1.

[23]*Id.* at 2.

[24]*Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

[25]*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[26]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

[27]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

Court will proceed to the second step in the due process analysis—ensuring that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"[28]

### A. Minimum Contacts

"Minimum contacts" can be established in one of two ways, either generally or specifically for lawsuits based on the forum-related activities:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.[29]

Plaintiff does not allege general jurisdiction, but instead alleges that Madison has minimum contacts with Kansas sufficient to give rise to specific jurisdiction. The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[30] To establish minimum contacts, the "defendant's suit-related conduct must create a substantial connection with the forum State."[31] One aspect of this requirement is that the Court must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[32]

Madison argues that it lacks minimum contacts with Kansas because it did not reach into the state to employ or terminate Plaintiff, and Gordon and Earnest were acting in their capacities as KAABOO officers—not officers of Madison—when they interacted with Plaintiff.

---

[28]*See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[29]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citations omitted).

[30]*Walden v. Fiore*, 34 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[31]*Id.* at 1121–22.

[32]*Id.* at 1122.

7

Additionally, Madison contends that the other purported contacts Plaintiff identifies, including the presence of Madison's logo on the quarterly review and disability time-off forms, Madison sending Plaintiff an invitation to its holiday party, and Gordon's statement to Plaintiff that he would always have a place at KAABOO and Madison, are not sufficient to give rise to personal jurisdiction because these contacts do not relate to Plaintiff's claims in this case.

Madison argues this case is akin to *Phillips USA v. Allflex*.[33] In *Phillips USA*, the plaintiffs sued two defendants, Allflex North American Holdings, Inc. ("ANAH") and Allflex USA, Inc. ("Allflex"), alleging tort and breach of contract claims.[34] ANAH moved to dismiss for lack of personal jurisdiction, arguing that it was simply a holding company for Allflex that conducted "no regular business activity."[35] ANAH supported its motion with a "detailed declaration from David C. Warren," who was an officer of both ANAH and Allflex.[36] ANAH also submitted transcripts from Warren's deposition. The Court granted ANAH's motion, emphasizing that "plaintiffs have attached no evidence in support of their claim that jurisdiction is proper, but rather rely solely on the allegations of their complaint and the arguments of their brief."[37] The Court noted that although establishing a prima facie showing of personal jurisdiction is not a heavy burden, "plaintiffs are required to produce some evidence to rebut defendant's evidence supporting its jurisdictional challenge."[38] Furthermore, the Court found that the plaintiffs' argument that Warren's capacity as president of ANAH was prima facie

---

[33]857 F. Supp. 789 (D. Kan. 1994).

[34]*Id.* at 790–91.

[35]*Id.* at 792.

[36]*Id.*

[37]*Id.*

[38]*Id.*

evidence of personal jurisdiction over ANAH was "misplaced."[39] The plaintiffs presented no "proof that Mr. Warren did *anything* in his capacity as an officer of ANAH which would establish contacts with the state of Kansas."[40] Madison argues that as in *Phillips USA*, Plaintiff here has alleged nothing more than Gordon and Earnest's dual roles as officers of both KAABOO and Madison.[41]

The Court is not persuaded that the ruling in *Phillips USA* guides the outcome of this motion. Importantly, the court in *Phillips USA* emphasized that the plaintiffs had presented no evidence in response to ANAH's jurisdictional challenge, which was supported by extensive evidence showing that ANAH was nothing more than a "shell corporation" that conducted no regular business. Here, by contrast, Plaintiff has responded to Madison's motion with substantial evidence, including a declaration, emails directed to Plaintiff regarding Madison events, employment documents bearing the Madison logo, and a separation agreement that included a release of claims against Madison. Additionally, Plaintiff here has shown more than that Gordon and Earnest worked for both KAABOO and Madison. He has presented prima facie evidence that they interacted with Plaintiff in their capacities as Madison officers, including that Gordon explained to Plaintiff that he would always have a place "at Madison," and that Earnest sent emails to Plaintiff from a "@madisoncos.com" email account.

---

[39] *Id.* at 793.

[40] *Id.*

[41] Doc. 25 at 7–8; *see also Lawford v. N.Y. Life Ins. Co.*, 739 F. Supp. 906, 916–17 (S.D.N.Y. 1990) (holding that court lacked jurisdiction over subsidiary (NYLCAN) of plaintiff's employer (New York Life) because although officer who terminated plaintiff was an officer of both companies, plaintiff "was an employee of New York Life, not NYLCAN," termination correspondence was written on New York Life stationary, and plaintiff provided "no evidence" that officer "acted in his capacity as a NYLCAN officer when dealing with plaintiff."); *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 550 (2000) (declining to exercise jurisdiction over parent company because although officer was a common director of both parent and subsidiary companies, "there is no evidence he made such decisions other than in his capacity as president of" subsidiary company).

Madison points to the declaration of Gordon, in which he states that Plaintiff reported to him and Jason Felts in their capacities as KAABOO officers, and that no one made any decisions regarding Plaintiff's employment while "acting in the capacity of an officer, employee, or agent of Madison."[42] Plaintiff, however, states in his declaration that he provided services to both Madison and KAABOO.[43] These competing declarations thus create a factual dispute as to the company or companies to which Plaintiff provided services and reported. Plaintiff's evidence, including employment review forms that include the Madison logo, also creates a factual dispute as to which company made employment decisions relative to Plaintiff. These factual disputes must be resolved in favor of Plaintiff.[44]

Certainly, Madison points to several facts that suggest KAABOO was Plaintiff's primary employer. Plaintiff's offer of employment came from KAABOO, as did his W-2s and paystubs, and the separation agreement Earnest sent him stated the agreement was between Plaintiff and KAABOO. But as Madison argues, the issue of whether Plaintiff was employed by both KAABOO and Madison, or employed only by KAABOO, does not dictate the personal jurisdiction inquiry. Rather, that inquiry is guided by whether Madison has sufficient contacts with Kansas such that it "should reasonably anticipate being haled into court there."[45]

The Court finds Madison's contacts with Plaintiff and Kansas are sufficient to give rise to personal jurisdiction. As explained above, at this stage of the litigation the Court must resolve the disputed issue of whether Plaintiff provided services to Madison in Plaintiff's favor. Thus, the Court finds that Madison benefited from Plaintiff's employment services, which Madison

---

[42]Doc. 25-1 ¶¶ 12, 14.

[43]Doc. 38-1 ¶¶ 3, 10–11, 14.

[44]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[45]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

knew he provided from his home in Kansas.  Additionally, Plaintiff filled out a quarterly review form that contained the Madison logo and discussed his review with Gordon.  Gordon did not clarify that the review was related only to Plaintiff's services for KAABOO.  Gordon and Earnest both sent emails to Plaintiff regarding his employment duties and disability time off—including the email terminating Plaintiff's employment—from their "@madisoncos.com" email accounts.  Gordon and Earnest did not state that they were acting only in their capacities as KAABOO officers in the course of these communications.  Gordon also expressed support for Plaintiff during his cancer treatment on behalf of both KAABOO and Madison, and explained to Plaintiff that he would always have a place "at Madison."  Finally, included in Plaintiff's separation agreement, which was mailed and emailed to him in Kansas, was a waiver of all claims against Madison, including several types of claims Plaintiff brings in this case.[46]  These contacts created a substantial connection between Madison, Plaintiff, and the forum state, Kansas.

Madison argues that the contacts Plaintiff identifies were not related to "the damages at issue in this lawsuit."[47]  Madison is correct that the Court must look to a "defendant's suit-related conduct" in assessing the sufficiency of contacts with the forum state.[48]  Indeed, several of the incidental contacts Plaintiff identifies are not central to this litigation, including the invitation to Plaintiff to attend the Madison holiday party, and emails regarding sales of festival tickets.  But

---

[46]Madison argues that the separation agreement was between Plaintiff and KAABOO and that there was no signature line for Madison on the document.  Additionally, Madison argues that "[s]everance agreements routinely seek a release of claims against all of an employer's affiliated companies."  Doc. 56 at 9.  Madison's involvement in procuring this waiver is clear, however, because the agreement specifically listed Madison and was presented to Plaintiff by a Madison officer.  Thus, the Court finds that this was more than simply KAABOO seeking a waiver on behalf of an affiliated company.

[47]Doc. 56 at 10.

[48]*Walden v. Fiore*, 34 S. Ct. 1115, 1121–22 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

other contacts that are attributable to Madison have a strong connection to this litigation, including email communications regarding Plaintiff's disability time off, his completion of a Madison-labeled employee review form, and the transmittal of his termination email and separation agreement. Additionally, several other contacts, while not related directly to this litigation, reflect that Gordon communicated with Plaintiff in his capacity as a Madison officer. These contacts include Gordon's statements to Plaintiff about his future at KAABOO and Madison. In sum, these contacts reveal that Madison reached into the forum state to interact with Plaintiff regarding his employment and termination, and also availed itself of Plaintiff's employment services in Kansas. Based on these contacts, the Court finds Plaintiff has presented prima facie evidence of personal jurisdiction over Madison. The Court therefore turns to whether exercising jurisdiction over Madison is reasonable.

### B. Reasonableness

Having found the requisite minimum contacts exist, the Court turns to whether the exercise of jurisdiction over Madison would be reasonable, that is, whether it would "offend traditional notions of fair play and substantial justice."[49] Neither party addresses this prong of the personal jurisdiction analysis in its briefs.[50]

Once a plaintiff has made a minimum contacts showing, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[51] Relevant considerations include (1) the burden on the defendant if the Court exercises jurisdiction; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in

---

[49] *Benton v. Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004).

[50] *See* Docs. 25, 38, and 56.

[51] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

12

obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering substantial social policies.[52] In this second step of the analysis, the court should consider the strength of the defendant's minimum contacts.[53] If these factors are strong, they may serve to establish the reasonableness of jurisdiction even if the plaintiff's showing of minimum contacts is weak.[54] Conversely, "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[55]

Plaintiff has demonstrated that the litigation-related contacts Madison had with Kansas and Plaintiff, while not overwhelmingly strong, are sufficient to support this Court's exercise of personal jurisdiction over Madison. Thus, the Court turns to whether the factors identified above dictate that jurisdiction would be unreasonable, despite the presence of minimum contacts.

### 1. Burden on Madison

Beginning with the first factor, the Court finds the burden placed on Madison as a result of litigating this case in Kansas is slight. Madison's principal place of business is in Colorado, a state that borders Kansas and that is within driving distance of this Court.[56] Thus, the burden in this case is substantially less than in a case involving a defendant located several states away or in a foreign country.[57] Although the Court recognizes defending this action in Kansas will

---

[52]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 153, 1161 (10th Cir. 2010).

[53]*TH Agrig. & Nutrition, LLC v.. Ace European Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

[54]*OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1095 (10th Cir. 1998); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

[55]*Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006) (quotations omitted).

[56]*See Jake's Fireworks, Inc. v. Sky Thunder, LLC*, No. 16-2475-JAR-GLR, 2017 WL 2618882, at *4 (D. Kan. June 16, 2017) (noting that burden on defendants was light in part because they were "located in Indiana, within driving distance of Kansas City, Kansas.").

[57]*See Manko Window Systems, Inc. v. Prestik*, No. 16-2818-JAR-JPO, 2017 WL 4355580, at *7 (D. Kan. Sept. 29, 2017) (describing significant burden placed on defendant, a Canadian corporation, in litigating case in Kansas).

impose some burden on Madison, "defending a suit in a foreign jurisdiction is not as burdensome as in the past."[58] Thus, the burden placed on Madison is not significant to the Court's reasonableness analysis.

### 2. Forum State's Interest

The second reasonableness factor focuses on the forum state's interest in resolving the dispute. "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[59] Plaintiff alleges that Madison, a Colorado resident, caused him injuries in Kansas. Thus, Kansas has an interest in providing Plaintiff a forum to litigate these claims. A forum state also has an interest where resolution of the dispute requires general application of the state's laws.[60] Plaintiff brings claims under federal and California law,[61] so Kansas has a lesser interest in this case than in cases involving claims under Kansas law. But as explained above, Kansas has an interest in providing Plaintiff a forum to litigate claims he alleges occurred in this state. Accordingly, this factor suggests that exercising jurisdiction in this case is reasonable.

### 3. Plaintiff's Interest in Receiving Convenient and Effective Relief

The third reasonableness factor turns on whether Plaintiff could receive convenient and effective relief in another forum. Although the Court is certain that Plaintiff could receive effective relief in another forum—for example, in California or Colorado—litigating this action

---

[58]*See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).

[59]*OMI Holdings*, 149 F.3d at 1096 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985)).

[60]*Id.*

[61]*See* Doc. 1 at 11–21.

in Kansas is obviously most convenient for Plaintiff, who resides in Kansas.[62] Thus, although Plaintiff could receive convenient and effective relief in another forum, this factor does not suggest that exercising jurisdiction in this case is unreasonable.

### 4. Interest in Obtaining Efficient Resolution of the Controversy

As to the fourth factor, the Court considers the interstate judicial system's interest in obtaining the most efficient resolution of controversies. "The key points to consider when evaluating this factor are (1) the location of witnesses, (2) the location of the wrong underlying the lawsuit, (3) what forum's law applies, and (4) 'whether jurisdiction is necessary to prevent piecemeal litigation.'"[63] The location of witnesses could be in Kansas, Colorado, and/or California, and federal and California law will apply. Thus, these factors suggest that several forums could provide an efficient resolution of the controversy. But Plaintiff alleges that he was injured in Kansas, and regardless of the outcome of this motion, Plaintiff will litigate this case against Defendant KAABOO in Kansas. Thus, the Court finds that the interest of the judicial system in obtaining an efficient resolution weighs in favor of exercising jurisdiction over Madison to prevent this case from being litigated in piecemeal fashion.

### 5. Shared Interest in Furthering Social Policies

Finally, the Court considers the shared interest of the several states in furthering fundamental social policies. This factor carries additional weight in cases involving foreign

---

[62]The Court notes that the burden placed on Plaintiff in litigating this case in Colorado would be as great as the burden placed on Defendant in traveling from Colorado to litigate this case in Kansas, and geographic realities suggest that the burden would be even greater on Plaintiff in traveling to California

[63]*Pro Axess, Inc. v. Orlux Distr., Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097).

15

defendants.[64] But nothing suggests that it is a significant factor in this case. Although Plaintiff brings claims under California law, neither party has suggested that that forum has a special interest in providing a forum for this case. This factor therefore has little bearing on the Court's analysis.

In sum, the factors discussed above suggest that exercising jurisdiction over Madison is reasonable. Although Plaintiff could probably receive convenient and effective relief in another forum, the burden on Madison in litigating here is light, and the interests of Kansas in providing a forum and of the judicial system in avoiding piecemeal litigation weigh in favor of this Court exercising jurisdiction over Madison. Accordingly, the Court finds that the exercise of jurisdiction over Madison will not "offend 'traditional notions of fair play and substantial justice.'"[65] For these reasons, the Court denies Madison's motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Madison Companies, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 24) is **denied**.

**IT IS SO ORDERED.**

Dated: August 31, 2018

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

[64]*See, e.g.*, *OMI Holdings*, 149 F.3d at 1097 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987)) ("the Supreme Court has cautioned that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'").

[65]*See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).